IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| KELLY L. MARTIN, Individually and on behalf of her minor child, CARTER Xxxxxx (identity protected as to minor status, and as an Agent for the U. S. Government, <br><br>　　Plaintiffs, <br><br>v. <br><br>BREWER, KRAUSE, BROOKS & CHASTAIN, ALI TOLL, Individually and as agent for BREWER, KRAUSE, BROOKS & CHASTAIN, JOHN DOE, and JANE DOE, <br><br>　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )　　Case No. 3:17-cv-00774 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND/OR FED. R. CIV. P. 12(b)(6)**

Come now the defendants, Brewer, Krause, Brooks & Chastain, PLLC, Ali Toll, Individually and as agent for Brewer, Krause, Brooks & Chastain, PLLC, John Doe, and Jane Doe (collectively "BKBC"), and submit this Memorandum in Support of their Motion to Dismiss the Complaint filed agiasnt them filed by the plaitiff, Kelly Martin ("the plaintiff").

**STATUTORY AND RULE BASIS FOR MOTION TO DISMISS**

This Court previously granted the plaintiff's motion to proceed *in forma pauperis* ("IFP"). When a Court has granted a motion to proceed IFP, 28 U.S.C. § 1915(e)(2) provides the Court <u>shall</u> dismiss the case under the following circumstances:

> **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--

> **(A)** the allegation of poverty is untrue; or
> **(B)** the action or appeal--
>   **(i)** is frivolous or malicious;
>   **(ii)** fails to state a claim on which relief may be granted; or
>   **(iii)** seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C.A. § 1915( e )(2).

The Motion to Dismiss is submitted under both 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

## PROCEDURAL BACKGROUND OF CASE AS IT RELATES TO THIS MOTION

In issuing its opinion granting the IFP application, this Court ultimately ruled that the "only claim surviving initial review" was the plaintiff's claim for violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, et seq. (Memorandum & Order, Docket No. 4, p. 5 of 7, PageID# 40). Accordingly, the Court permitted the case to develop to determine "if the PeopleMap report "constitutes a consumer report governed by the FCRA…." (Memorandum & Order, Docket No. 4, p. 4 of 7, PageID# 39). The Court also permitted discovery and required a reasonable investigation to identify any John or Jane Does or any individual involved in the running of the alleged PeopleMap report. (Memorandum & Order, Docket No. 4, p. 6 of 7, PageID# 41). This Court, obviously, considered as true the allegation that BKBC actually ran obtained a PeopleMap report on the plaintiff.

## BKBC HAS ESTABLISHED THAT NO PEOPLEMAP REPORT WAS EVER RUN ON THE PLAINTIFF

Filed contemporaneously with the Motion to Dismiss is the Affidavit of Connie Reed ("Reed"), Legal Administrator for BKBC (Affidavit of Reed, ¶ 3). In her capacity as Legal Administrator, Reed was responsible for monitoring Westlaw usage at the firm. This included usage of the Westlaw function known as "PeopleMap." (Affidavit of Reed, ¶ 4). In that capacity, she can log on to the Westlaw system to review any reports Westlaw

provides, and to print those reports out. (Affidavit of Reed, ¶ 5-6).

The only persons at Brewer, Krause, Brooks & Chastain, PLLC who can use Westlaw are attorneys and paralegals. (Affidavit of Reed, ¶ 7). When any authorized users (only attorneys and paralegals) use Westlaw, they must identify a client ID. That means a research inquiry is attributable to a certain file in which the firm is representing a party in litigation or in a business matter. (Affidavit of Reed, ¶ 8). Sometimes, the entry "firm matter" will appear. In that case, it can mean the Westlaw query was not on a billable file, or was some type of personal matter. (Affidavit of Reed, ¶ 9. When any user at Brewer, Krause, Brooks & Chastain, PLLC, utilizes Westlaw to perform a PeopleMap search, a record is created that will reveal the name of the individual upon whom the search is being performed or the other information (such as phone number) of the person upon whom the search is being performed. In other words, had a search been performed for Kelly Martin, a record would be produced and available. (Affidavit of Reed, ¶ 11).

Reed provided as Exhibit 1 to her affidavit the print-out of all PeopleMap searches performed by all authorized users between October 7, 2016, and April 27, 2017. This encompasses the time-period of the employment of Kelly L. Martin, which was from October 17, 2016 through December 1, 2016 (Affidavit of Reed, ¶ 10). These records do not reflect any PeopleMap search for Kelly L. Martin. (Affidavit of Reed, ¶ 12). So that the Court can see that no search has been run on Kelly L. Martin, the full printout has been provided. BKBC redacted only portions of the encrypted query text that would disclose potentially personal identifying information regarding the subject of the search, and has endeavored to leave enough information available so this Court can see there is no reference at all to Kelly L. Martin. (Affidavit of Reed, ¶ 13).

BKBC has also provided another avenue of establishing that no PeopleMap search was ever run on the plaintiff. The Affidavit of Reed establishes that the only persons who ran PeopleMap searches during the time period of the plaintiff's employment with BKBC were:

> A. Theresa L. Carrico - Paralegal;
>
> B. E. Jason Ferrell - Attorney;
>
> C. Alethia C. Glimenakis-Melia – Paralegal;
>
> D. Rachael C. McMichael – Paralegal; and
>
> E. Alisha M. Toll – Attorney.

(Affidavit of Reed, ¶ 14). As additional support for the Motion to Dismiss, affidavits are being filed contemporaneously from each of these individuals who used PeopleMap during the time period of the plaintiff's employment with BKBC confirming that, at no time, did they run a PeopleMap search on the plaintiff, Kelly L. Martin. (Affidavit of Reed, ¶ 15). See also Affidavits of Theresa L. Carrico (Paralegal), E. Jason Ferrell (Attorney), Alethia C. Glimenakis-Melia (Former Paralegal – no longer employed), Rachael C. McMichael (Paralegal) and defendant, Alisha ("Ali") M. Toll (former Attorney – no longer employed) (collectively referred to as the "Employee Affidavits").

The report attached to the Reed Affidavit as well as the Employee Affidavits show there were no PeopleMap searches run on the plaintiff, Kelly L. Martin, at any time during her employment as alleged in the Complaint. (Affidavit of Reed, ¶ 16; Employee Affidavits). These Employee Affidavits were provided just in case the Court needs further clarification and confirmation that the individuals who have been identified as running PeopleMap searches during the relevant timeframe did not, in fact, perform PeopleMap searches on Martin. These affidavits should clearly establish that no one at BKBC performed a PeopleMap search on Martin as alleged. For this reason, the factual predicate for the discovery this Court indicated might be permissible is simply non-existent, as is any concern over whether a PeopleMap search "constitutes a consumer report governed by the FCRA…." There is simply no reason for any discovery to continue in this matter. Accordingly, the factual predicate of the plaintiff's only surviving claim is entirely false, and any discovery or investigation this Court indicated could be undertaken (on the issues of whether the PeopleMap constituted a "consumer report" or

the identity of individuals involved) would be a complete waste of time.

Where did the false allegation that a PeopleMap search was run on the plaintiff come from? BKBC has no idea, except that it came from the plaintiff herself with absolutely no factual support or proof. A potential source of plaintiff's creation of this argument will be discussed below, but for now, BKBC would point out that allowing such a baseless lawsuit to continue is even worse in this type of case because the Fair Credit Reporting Act actually provides that attorney fees can be awarded against the plaintiff if this Court finsds that the suit was brought in bad faith or for harassing purposes, noting as follows:

> **(c) Attorney's fees**
>
> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

Fair Credit Reporting Act, 15 U.S.C. § 1681n ( c ) - Civil liability for willful noncompliance.

Furthermore, case law does not limit recovery of fees in a case brought under the Fair Credit Reporting Act to this statute (and thus to situations where the suit is frivolous or malicious). For instance, in the case of <u>Marx v. Gen. Revenue Corp.</u>, 668 F.3d 1174, 1178 (10th Cir. 2011), <u>aff'd,</u> 568 U.S. 371, 133 S. Ct. 1166, 185 L. Ed. 2d 242 (2013), the Court noted:

> The issue here is whether a prevailing defendant can be awarded costs in a FDCPA suit without a finding that the plaintiff brought the action in bad faith and for the purpose of harassment. This requires us to consider whether § 1692k(a)(3) supersedes Rule 54(d). We hold that it does not, and that this Defendant is entitled to a recovery of costs pursuant to Rule 54(d).

KLM Rev Mem Mot Dismiss 170621

5

Case 3:17-cv-00774   Document 17   Filed 06/21/17   Page 5 of 15 PageID #: 204

The Court is allowing this plaintiff to proceed IFP, meaning that she does not even have to bear any costs in bringing this baseless suit. Certainly, if she cannot afford the costs to bring this suit, she will not be able to pay BKBC's attorney fee bill when it prevails on this basis. Thus, this Court should give more extreme and strict scrutiny to this matter given the factual proof presented by BKBC that the entire basis of the plaintiff's Fair Credit Reporting Act claim is factually false.

## ARGUMENT

### I. THIS COURT HAS BROADER DISCRETION IN DISMISSING A CASE FILED UNDER IFP STATUTES.

In issuing its opinion granting the IFP application (see Memorandum and Order, Docket No. 4), this Court did undertake a review of whether the claim submitted by the plaintiff was frivolous. It properly dismissed many of the claims included within the Complaint, and ultimately recognized that the "only claim surviving initial review" was the plaintiff's claim for violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, et seq. This Court was, obviously, correct in noting the general rule that the allegations of a Complaint must be taken as true when ruling on a Motion to Dismiss. When cases are filed under IFP statutes, case law does allow dismissal of claims that can be determined at an early stage to be deemed frivolous. *Feliciano v. DuBois*, 846 F.Supp. 1033 (D. Mass. 1994). This Court is authorized to establish pleading standards that are different from, and more stringent than, those imposed by the Federal Rules of Civil Procedure. *Harvey v. Clay County Sheriff's Department*, 473 F.Supp. 741 (W.D. Mo. 1979). This Court actualy has **broad** discretion in dismissing an IFP case that is determined to be frivolous. See, e.g., *Jones v. Bales*, 58 F.R.D. 453 (N.D. Ga. 1972).

Additionally, the Court always has the discretion to consult its own records – not simply from the pending IFP Petition and this particiular case – as an aid in determining whether an IFP Complaint is subject to dismsisal as frivolous. *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975), cert. denied, 96 S. Ct. 198, 423 U.S. 896, 46 L.Ed.2d 129. Finally, as with any Motion to Dismiss, if the Court determines that it is appropriate to consider other extraneous evidence, the Motion to Dismiss can be converted to a Motion for Summary Judgment. See, e.g., *Caffey v. Johnson*, 883 F.Supp. 128 (E.D. Tex. 1995).[1]

In light of these rules, and the IFP status of the plaintiff, there are two reasons the plaintiff's Complaint should be dismissed.

---

[1] BKBC realizes this Court may have to treat this matter as a Motion for Summary Judgment, and if the Court feels so inclined, invites and requests the Court to do so. However, under no circumstance should any discovery be permitted until such time as the Court rules on this motion, either as a Motion to Dismiss or, because extrinsic evidence is submitted, as a Motion for Summary Judgment. There is simply no reason to subject BKBC to any additional expense because of this frivolous lawsuit, because there was no PeopleMap search run. This Court has already acknowledged that this Fair Credit Reporting Act claim is the only possible means by which the plaintiff's claim can proceed, and the entire premise of the plaintiff's argument (i.e., that a PeopleMap report was obtained) is entirely false.

KLM Rev Mem Mot Dismiss 170621                                7

Case 3:17-cv-00774   Document 17   Filed 06/21/17   Page 7 of 15 PageID #: 206

## II. THIS COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. Civ. P. 12 (b)(6).

In its Order (Docket No. 4), the court permitted discovery to determine if the PeopleMap report "constitutes a consumer report governed by the FCRA, "as well as to identify the individuals who were allegedly involved in the running of the PeopleMap report. However, in order to proceed, the plaintiff must be able to establish that there was some consumer report governed by the Fair Credit Reporting Act that was actually obtained or used by BKBC. While she has asserted that a PeopleMap report constitutes such a "consumer report," there are two problems with her pleading. First of all, the report was never obtained, and the plaintiff has not alleged any facts establishing that it was obtained or used. Second, she does nothing to establish that PeopleMap would be considered a "consumer report." The plaintiff merely identifies PeopleMap and asserts that it is subject to the Fair Credit Reporting Act.

The Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. *Ashcroft v. Iqbal,* 566 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). See also Bowman v. Selection Mgmt. Sys., Inc., No. 7:06CV00110, 2010 WL 3783446, at *1 (W.D. Va. Sept. 28, 2010). Where the Complaint is simply void of sufficient factual assertions, or the facts sufficient to establish essential elements of the plaintiff's case, it should be dismissed. See e.g. Booker v. Washington Mut. Bank, FA, 375 F. Supp. 2d

KLM Rev Mem Mot Dismiss 170621

8

Case 3:17-cv-00774   Document 17   Filed 06/21/17   Page 8 of 15 PageID #: 207

439, 441 (M.D.N.C. 2005). While the plaintiff asserts that a PeopleMap was obtained, she has alleged and produced no factual evidence of that report, and BKBC has now rebutted an essential element of her claim through the Affidavit off Reed and the Employee Affidavits. There are no facts alleged that establish – or even support the contention - that BKBC obtained or used the PeopleMap, and case law is clear that such "naked assertions devoid of further factual enhancement" are simply not sufficient to allow a Complaint to proceed.[2]

### III. THIS COURT SHOULD DISMISS THE COMPLAINT AS IT IS FRIVIOUS OR MALICIOUS UNDER 28 U.S.C. § 1915(e)(2)(B)(i).

However, there is another reason the cause of action should be dismissed. As set forth above, this Court can review its own records and determine that the action is frivolous or malicious. At the time this Court entered its Memorandum & Order dated May 16, 2017 (Doket #4), the plaintiff had not yet filed lawsuit 3:17-CV-00869 against Randy Mantooth, Individually, and as agent of Leitner, Williams, Dooley & Napolitan (the "Leitner suit"). The Leitner suit was filed in this Court on May 19, 2017. The

---

[2] Should this Court convert the Motion to a Motion for Summary Judgment, the motion for summary judgment must be granted when there is a complete failure of proof concerning essential elements of a plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in a patent case to beneficially isolate and dispose of factually unsupported claims. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77 (Fed.Cir.1989). Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. FED. R. CIV. P. 56(c); *Krug v. Cty. of Rennselaer,,* No. 104-CV-0640 TJM/DRH, 2006 WL 2669122, at *1 (N.D.N.Y. Sept. 18, 2006).

plaintiff has even moved to consolidate the BKBC suit with the Leitner suit.³

A review of the pladings in the Leitner suit provides evidence of a pattern of allegations which appear in the Complaint against BKBC. The plaintiff attached Leitner's Response to the Equal Employment Opportunity Commission ("EEOC") to her Complaint in the Leitner suit. Review of that Response reveals that the plaintiff had made essnetially the same allegations against Leitner as wer emade against BKBC. Specifically, the Leitner response from March 10, 2011 (Case # 3:17-CV-00869, Document 1-1, Page 1 of 13, PageID#13) notes:

> Although Mr. Thomas had been able to salvage Ms. Martin's employment, Mr. Mantooth remained concerned that Ms. Martin had displayed a great deal of immaturity in this episode. He disapproved of Ms. Martin's having shared intimate personal details about her 'past stupidity' with her coworkers. Mr., Mantooth reasonably believes that the workplace is not an appropriate venue to air one's own dirty laundry or to seek affirmation for having turned the corner in one's personal life. Furthermore, Mr. Mantooth felt that Ms. Martin displayed additional immaturity in her response to what she thought to have been workplace gossip.

(Case # 3:17-CV-00869, Document 1-1, Page 5 of 13, PageID#17). These basic allegations sound very similar to those made against BKBC and specifically Alisha Toll, in the BKBC Complaint (Docket #1, ¶¶ 25-26, p. 5 of 9, PageID# 5). The Leitner response continues:

> **MS. MARTIN'S CHARGES OF DISCRIMINATION:**
>
> Ms. Martin's charges are somewhat puzzling. She initially complains that the Firm has failed to maintain confidentiality about her conditions, stating that his alleged condition has been a 'source of comment, derision, and gossip since shortly after my hire.' Once again, the Firm is unaware that Ms. Martin suffers from any disabling condition. She has never indicated

---

³ The Defendant, Ali Toll, has filed a response to the Motion to Consolidate previously, and Brewer, Krause, Brooks & Chastain, PLLC would join that response.

KLM Rev Mem Mot Dismiss 170621     10

Case 3:17-cv-00774 Document 17 Filed 06/21/17 Page 10 of 15 PageID #: 209

> to Mr. Thomas or anyone else within Firm management or administration that she suffers from any disabling condition or that she requires any accommodation. Indeed, within her charges, Ms. Martin fails to disclose to the EEOC what her condition might be. As far as Firm management and Firm administration is concerned, Ms. Martin suffers from no disabling condition, and neither Firm management nor Firm administration has ever suggested to anyone that she does.
>
> At most, we can conclude from Ms. Martin's charges and from the somewhat vague comments she made to Ms. Parker, Mr. Thomas and Mr. DeMent in her May 6, 2010 email that her coworkers may have made fun of her for what she describes as 'past stupidity.' Even here, however, the Firm is uncertain to what 'past stupidity' Ms. Martin refers since the Firm has not undertaken an investigation to find out what Ms. Martin may have done; such issues were irrelevant to her continued employment with the Firm.

(Case # 3:17-CV-00869, Document 1-1, Page 5 of 13, PageID#17-18). Interestingly, a handwritten notation appears above this final paragraph:

**Request any and all Westlaw next records re: same. Research.**

(Case # 3:17-CV-00869, Document 1-1, Page 5 of 13, PageID#18). This appears to be the basis of plaintiff's idea that Westlaw records were obtained which revealed this personal information about her "past stupidity." BKBC has yet to obtain the EEOC materials that plainitff invites others to obtain to see if addiitonal similarities exist between her original EEOC Charge of Discrimination against Leitner and the allegations she had made against BKBC, but this Court can review its own records and consider such records as non-extraneous materials in ruling on a Moiton to Dismiss. See e.g. *Van Meter v. Morgan*, supra.

These other allegations and materials from the Leitner suit are relevant to the frivolous and malicious nature of the plaintiff's Complaint against BKBC. Further, the information contained in the Leitner suit – generated back in 2011 – actually provides a roadmap or plan of action that the plaintiff seems to have employed again with respect

to her employment at BKBC, once again evidencing the frivolous and malicious nature of the suit against BKBC, particularly now that it has been established that BKBC did not obtain a PeopleMap report on the plaintiff. These materials establish the pattern on the part of the plaintiff of:

- Obtaining legal employment with a firm;
- Disseminating personal information about herself and her "past stupidity";
- Claiming harassment and discrimination when others allegedly talk or gossip in the workplace to the point at which a prior employer thought her response to workplace gossip was a sign of "immaturity";
- Claiming that the firm/employer obtained that information through some legal research means (perhaps even Westlaw as referenced in the handwritten note above and in the Complaint against BKBC); and then
- Claiming that the firm failed to consider a disabling condition she had without making an accommodation.

The plaintiff – by the very description she provided in her Complaint – followed this pattern and even tried to improve in it by sending the e-mail attached to her Complaint to Reed.

The plaintiff's plan is further evidenced from the exhibits to her Complaint. If the Court will note, each e-mail attached to the Complaint was received by the plaintiff at her BKBC e-mail address, then forwarded – prior to the date of her termination – to another e-mail account (tennesseenotary@outlook.com), which according to the e-mail address was also the plaintiff, Kelly Martin. For instance, at Document 1-1, p. 7 of 16, PageID# 16), Martin reveals the forwarding of the e-mails as follows:

> **Gmail**  Kelly Martin <kmcertifiedparalegal@gmail.com>
>
> **Fw: Billing articles**
> 1 message
>
> **Kelly Martin** <tennesseenotary@outlook.com>  Sat, Dec 3, 2016 at 11:50 AM
> To: "kmcertifiedparalegal@gmail.com" <kmcertifiedparalegal@gmail.com>
>
> **From:** Kelly Martin <kmartin@bkblaw.com>
> **Sent:** Monday, November 21, 2016 7:26 PM
> **To:** tennesseenotary@outlook.com
> **Subject:** FW: Billing articles

This pattern occurs on other e-mails attached to the Complaint against BKBC.

Thus, the plaintiff clearly shows that she was attempting to bolster the arguments she had against BKBC – perhaps in light of the fact she did not pursue suit against Leitner in 2011 – and was setting the stage for this suit prior to her termination by following the plan described or explained in the Leitner suit materials.

As noted above, this Court has broad discretion to dismiss a case under this statute, and has the discretion to determine that a suit is frivolous or maliciously filed. This Court should exercise this discretion considering the facts that:

  1. BKBC never obtained a PeopleMap report on the plaintiff, thereby negating the most basic, essential element of the only surviving claim this Court has identified and pointing out that the plaintiff filed her suit without reasonable investigation and without any facts to support the claim under the Fair Credit Reporting Act; and

  2. This suit simply follows the pattern of conduct the plaintiff utilized in her disputes with the Leitner firm almost 6 years ago. This pattern should not be ignored,

KLM Rev Mem Mot Dismiss 170621  13

Case 3:17-cv-00774   Document 17   Filed 06/21/17   Page 13 of 15 PageID #: 212

especially when her efforts to assert essential elements of claims against BKBC have been rebutted and she has absolutely no factual evidence of the running of any type of PeopleMap search (yet continues, as she did against Leitner, to claim that some investigation was performed. Plaintiff has simply made a false conclusory allegation that a PeopleMap search was run – but has not provided the search, has not given any evidence other than her own statement that it was performed, but BKBC has affirmatively established, through witnesses other than itself, that no such search was performed. Martin should not be able to subject BKBC, a respected law firm, to a frivolous lawsuit by making such an allegation with no factual support. The Leitner suit, as well as all instances referenced in both the BKBC and Leitner suit, show that Martin has undertaken a pattern of practice to sue law firm for which she has been employed making allegations that are completely disputed by the law firm. This Court has the inherent discretion, and statutory discretion, to dismiss this case solely based upon the review of its own documents, including the Leitner suit.

## CONCLUSION

For the reasons set forth above, BKBC moves this Honorable Court to dismiss the suit in its entirety. In the alternative, BKBC would move this court to rule on this matter as a Motion for Summary Judgment, but stay all discovery until that ruling is entered, which would specifically require the plaintiff to affirmatively establish some evidence creating a genuine issue of material fact that a PeopleMap search was actually run and used as alleged. There is simply no reason for BKBC to continue to incur any legal fees defending this frivolous claim.

Respectfully submitted,

    s/Parks T. Chastain
**PARKS T. CHASTAIN**
Registration No. 13744
Attorney for Defendants, Brewer, Krause, Brooks &
Chastain, PLLC and Ali Toll

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2017, a true and correct copy of the foregoing has been sent, via first-class mail, postage prepaid to:

Ms. Kelly L. Martin
177 Tyler Town Road
Clarksville, TN 37040

    s/ Parks T. Chastain
**PARKS T. CHASTAIN**